IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDY HOPE WILLIAMS JR.; a/k/a PROPHET; a/k/a AMBASSADOR; a/k/a MINISTER; a/k/a EX-OFFENDER; a/k/a DESCENDENT a/k/a HOOD CANDIDATE,<br><br>    Plaintiff,<br><br>vs.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; J.B. PRITZKER in his official capacity as Governor of Illinois,<br><br>    Defendants. | Case No. 20 C 2495 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Andy Hope Williams Jr., an Illinois citizen, has sued the Governor of Illinois, J.B. Pritzker, alleging that the public health measures the Governor adopted to curb the spread of the novel coronavirus (COVID-19) violated his constitutional rights, among other claims. Williams asserts claims against the Governor in his official capacity under 42 U.S.C. § 1983. He alleges that the Governor violated his constitutional rights under the First, Fifth, and Fourteenth Amendments to the U.S. Constitution (counts 1 and 2), the federal Religious Freedom Restoration Act (RFRA) (counts 3, 4, and 5), and the Administrative Procedure Act (APA) and the American Declaration on the Rights of Indigenous Peoples, a declaration made by member states of the Organization of American States (Indigenous Peoples Declaration) (count 5).

The defendant has moved under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) to dismiss all of Williams's claims. For the reasons stated below, the Court grants the defendant's motion to dismiss the plaintiffs' claims.

## Background

In the complaint, the plaintiff alleges the following facts, which, at this stage, the Court accepts as true. *O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 342 (7th Cir. 2018).

Williams is seeking the nomination of the Libertarian Party for President. As a member of the Libertarian Party, he was scheduled to participate in debates in various states to obtain the party's nomination. On March 20, 2020, the Governor, by an executive order (EO 2020-10), directed Illinois citizens to stay at home to curb the spread of COVID-19, practice "social distancing," and ordered non-essential businesses and operations to cease. On April 1, 2020, the Governor issued Executive Order 2020-18 (EO 2020-18), which extended the previous order to April 30, 2020. On May 5, 2020 the Governor announced the "Restore Illinois Plan," which included a restoration of social activities in five phases, to limit COVID-19's spread. On May 29, 2020 the Governor issued Executive Order 38 (EO 2020-38) which initiated Phase 3 of Restore Illinois. Phase 3 restored some activities that had been paused as COVID-19 spread throughout Illinois.

Williams alleges that the public health measures adopted by the Governor have prevented him from completing activities necessary to obtain the Libertarian Party's nomination for President. These activities include gathering 5,000 of the 25,000 signatures needed to obtain ballot access in Illinois. Williams contends that this

constitutes a violation of the right to freedom of association under the First Amendment.

Williams also alleges that the Governor's stay-at-home order violated various other constitutional rights. He asserts that the Governor violated his right to free exercise of religion under the First Amendment because of the restrictions the order imposed on religious gatherings and houses of worship. He also alleges that the stay-at-home orders violated his rights under the Fifth Amendment's Takings Clause and the Fourteenth Amendment's Due Process Clause. Finally, Williams asserts claims for violation of various federal statutes—including RFRA and the APA—as well as the Indigenous Peoples Declaration, and he seeks a writ of mandamus.

## Discussion

The Governor has moved to dismiss the claims against him under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and under Rule 12(b)(6) for failure to state a claim. "A motion to dismiss under Rule 12(b)(1) tests the jurisdictional sufficiency of the complaint, accepting as true all well-pleaded factual allegations and drawing reasonable inferences in favor of the plaintiffs." *Bultasa Buddhist Temple of Chi. v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017). "As the party invoking federal jurisdiction, a plaintiff bears the burden of establishing [that] the elements" for jurisdiction are met. *Silha v. ACT, Inc.*, 807 F.3d 169, 173-74 (7th Cir. 2015). "In evaluating a challenge to subject matter jurisdiction, the court must first determine whether a factual or facial challenge has been raised." *Id.* at 173. "A factual challenge contends that there is *in fact* no subject matter jurisdiction, even if the pleadings are formally sufficient." *Id.* (internal citations omitted). "In contrast, a facial challenge argues that the plaintiff has not sufficiently *alleged* a basis for subject matter

jurisdiction." *Id.* In this case, the defendant's Rule 12(b)(1) motion to dismiss counts 1, 3, 4, and 5 is best understood as a facial challenge because the Governor contends that Williams's complaint lacks sufficient factual allegations to establish subject matter jurisdiction.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's complaint must allege facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inferences that the defendant is liable for the misconduct alleged." *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 894 (7th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At this stage, the law does not impose a highly exacting standard on the plaintiffs, however: "[t]he plausibility standard is not akin to a 'probability requirement.'" *Iqbal*, 556 U.S. at 678. A plaintiff's burden on a motion to dismiss is limited to alleging "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). But in ruling on a motion to dismiss, the Court is "not obliged to accept as true legal conclusions or unsupported conclusions of fact." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 66, 633 (7th Cir. 2007) (internal quotation marks omitted).

**A.  Constitutional claims**

    **1.  First Amendment**

In count 1 of his complaint, Williams contends that the Governor violated his First Amendment rights. He alleges that the Governor violated his right to freedom of

association because the stay-at-home order prevented him from completing activities necessary to secure the Illinois Libertarian Party's nomination for President. Williams also contends that stay-at-home order, which imposes limitations on religious gatherings and houses of worship, violated his right to free exercise of religion. The Governor has moved to dismiss Williams's First Amendment claims because they are moot, or alternatively, because Williams fails to state a plausible claim.

### i. Freedom of association claim

Ballot access laws may "place burdens on two different, although overlapping, kinds of rights—the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Williams v. Rhodes*, 393 U.S. 23, 30 (1968).

Williams concedes, however, that his claim has been rendered moot by a decision issued by another judge of this Court. Williams's Resp. (dkt. no. 19) at 3. In April 2020, Chief Judge Rebecca Pallmeyer granted a preliminary injunction that relaxed ballot-access measures. *See Libertarian Party of Illinois v. J.B. Pritzker*, No. 20 C 2112, --- F. Supp. 3d ---, 2020 WL 1951687 (N.D. Ill. Apr. 23, 2020). Under the order, electronic signatures are permitted. *See id.* at *4. The order also extended the petition deadline and reduced the numerical signature requirement to 10 percent. *See id.*

The Court concludes that the ballot access measures Williams challenges in his complaint no longer exist. And Williams does not allege that the modified ballot access restrictions violate his First Amendment right to freedom of association. For these reasons, the Court concludes that given the relaxation of the ballot-access measures initially impacted by the Governor's stay-at-home order, Williams's claim, that he cannot

obtain 5,000 of the 25,000 signatures required to obtain ballot access, has been rendered moot by Judge Pallmeyer's ruling allowing for electronic signatures and a reduction of the numerical signature requirement by 90 percent. See Compl. ¶ 57. Accordingly, "there is no longer an ongoing controversy," and "the source of the plaintiff's prospective injury has been removed." See Ozinga v. Prince, 855 F.3d 730, 734 (7th Cir. 2017); see also Speech First, Inc. v. Killeen, 968 F.3d 628, 645 (7th Cir. 2020), as amended on denial of reh'g and reh'g en banc (7th Cir. Sept. 4, 2020).

### ii. Free exercise claim

In count 1 of his complaint, Williams also alleges that the Governor violated his right to free exercise of religion under the First Amendment because the stay-at-home order prevents him from "freely exercis[ing] his religion/spirituality." Compl. ¶ 83.

The Governor argues that Williams's free exercise claim is moot because EO 2020-38, issued on May 29, 2020 and superseding all previous COVID-19 executive stay-at-home orders, "removed all mandatory restrictions on gatherings for the free exercise of religion." Def. Governor's Mem. (dkt. no. 14) at 2. Further, the Governor argues that EO 2020-38, expressly "does not limit the free exercise of religion." See https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2020-38.aspx (last updated May 29, 2020). Accordingly, the Governor contends, Williams is now permitted to freely engage in religious activities without restrictions posed by the Governor's executive orders.

The Governor's argument, that Williams's claim is moot, is incorrect. In a similar case challenging the Governor's stay-at-home orders, the Seventh Circuit explained that the application of the voluntary cessation doctrine thwarts the defendant's mootness

argument. *See Elim Romanian Pentecostal Church v. Pritzker*, 962 F.3d 341, 345 (7th Cir. 2020). "Voluntary cessation of the contested conduct makes litigation moot only if it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000)). "Otherwise the defendant could resume the challenged conduct as soon as the suit was dismissed." *Id.* The Seventh Circuit further explained that the "list of criteria" for restoring tighter restrictions to reduce the spread of COVID-19 "shows that it is not absolutely clear that the terms of Executive Order 2020-32 will never be restored." *Id.* (internal quotation marks omitted). For these reasons, "[it] follows that the dispute is not moot" and the Court "must address the merits" of Williams's challenge to the stay-at-home order "even though it is no longer in effect." *See id.*

The order Williams primarily challenges in his complaint is EO 2020-10, issued by the Governor on March 20, 2020. He also challenges EO 2020-18, an extension of the March 20 order, which the Governor issued on April 1, 2020 and extended through April 30, 2020.[1] *See* https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2020-10.aspx (last updated March, 20 2020); *see* https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2020-18.aspx (last updated April 1, 2020). Neither of these orders are in effect because EO-38 superseded them.

The Governor argues that the COVID-19 stay-at-home orders are reasonable

---

[1] For simplicity's sake, the Court will refer to the challenged order as EO 2020-10 throughout, without mention of EO 2020-18, because EO 2020-18 merely extends EO 2020-10.

7

public health regulations and do not violate the First Amendment's Free Exercise Clause. To support this argument, the Governor cites *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905), in which the Supreme Court "recognized that a community has the right to protect itself against an epidemic of disease which threatens the safety of its members." *Id.* at 27. The Governor contends that under *Jacobson* and other applicable case law, the stay-at-home orders do not violate the Free Exercise Clause because the "State must be able to take swift and decisive action" to "combat a virulently infectious disease in an emergency pandemic," which includes restrictions on large gatherings. Def. Governor's Mem. at 7. The Governor argues that large public gatherings facilitate the spread of COVID-19. He cites a number of instances of mass infection that have been traced back to large gatherings, including in-person religious services, during which congregants may stand in close quarters, speak aloud, and sing. For these reasons, the Governor contends, *Jacobson* as well as recent rulings by other judges of this Court—Judge Lee's recent ruling in a similar case, *Cassell v. Snyders*, No. 20 C 50153, --- F. Supp. 3d ---, 2020 WL 2112374 (N.D. Ill. May 3, 2020), and Judge Gettleman's ruling in *Elim Romanian Pentecostal Church,* No. 20 C 2783, 2020 WL 2468194 (N.D. Ill. May 13, 2020), *aff'd*, 962 F.3d 341 (7th Cir. 2020)—refute Williams's free exercise claims. The Court agrees.

The Supreme Court in *Jacobson* announced that states may "enact quarantine laws and health laws of every description." *Id.* Two other judges of this Court, in similar cases challenging the Governor's stay-at-home orders, ruled that the COVID-19 pandemic is the type of public health crisis contemplated by the Supreme Court in *Jacobson*.

As Judge Lee explained in a similar lawsuit challenging EO 2020-18 under the First Amendment's Free Exercise Clause, "the traditional tiers of constitutional scrutiny do not apply" when *Jacobson* is implicated. *Cassell*, 2020 WL 2112374, at *6. "*Jacobson* preserves the authority of the judiciary to strike down laws that use public health emergencies as a pretext for infringing individual liberties," but under these "narrow circumstances, courts only overturn rules that lack a 'real or substantial relation to [public health]' or that amount to 'plain, palpable invasion[s] of rights.'" *Id.* at *6-7 (quoting *Jacobson*, 197 U.S. at 31).

Judge Gettleman, in a similar action involving a free exercise challenge to the Governor's stay-at-home orders, held that *Jacobson* "is implicated by the current health crisis," EO 2020-32 "advances the State's interest in protecting its citizens from the pandemic," and therefore the plaintiffs had a "less than negligible chance" of clearing *Jacobson*'s "emergency crisis standard." *Elim*, 2020 WL 2468194, at *3, *aff'd*, 962 F.3d 341 (7th Cir. 2020). The Seventh Circuit indicated that it agreed with Judge Gettleman's *Jacobson* analysis, holding that *Jacobson* "sustains a public-health order against a constitutional challenge" and that EO 2020-32, issued on April 30, 2020, "responds to an extraordinary public health emergency." *Elim*, 962 F.3d at 344-47 (quoting *Elim Romanian Pentecostal Church v. Pritzker*, No. 20-1811, 2020 WL 2517093, at *1 (7th Cir. May 16, 2020) (denying emergency motion to enjoin the Governor's stay-at-home order pending appeal)).

The Court agrees with the Governor's argument that under *Jacobson*, the stay-at-home orders, including EO 2020-10, which Williams challenges, advanced the State's interest in curbing the spread of COVID-19 to protect Illinois citizens. The Governor

9

issued EO 2020-10 to preserve public health and safety throughout the state of Illinois, nine days after the World Health Organization characterized the COVID-19 outbreak as a pandemic. In EO 2020-16, issued less than two weeks after EO 2020-10, the Governor explained that COVID-19 cases in Illinois were increasing exponentially and across more locations in Illinois, with the possibility of exhausting the state's healthcare resources. *See* https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2020-18.aspx (last updated April 1, 2020). As of March 20, 2020, more than 10,000 people had died of COVID-19 around the world. Chicago Tribune Staff, *Coronavirus in Illinois updates: Here's what happened March 20 with COVID-19 in the Chicago area*, Chicago Tribune (March 20, 2020, 8:05 PM), https://www.chicagotribune.com/coronavirus/ct-coronavirus-pandemic-chicago-illinois-news-20200320-fdctizo64fdqpeoldclt45ei74-story.html. These dire circumstances warranted the "unprecedented limitations" enacted by the Governor. *See Libertarian Party of Illinois v. J.B. Pritzker*, No. 20 C 2112, --- F. Supp. 3d. ---, 2020 WL 1951687, at *5 (N.D. Ill. Apr. 23, 2020).

Moreover, even if *Jacobson* did not apply, the Court agrees with the Governor's argument that Williams has not stated a plausible free exercise claim because the stay-at-home order, namely EO 2020-10, was neutral and generally applicable. In *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990), the Supreme Court held that a neutral law of general applicability does not violate the Free Exercise Clause even if it has an incidental effect of burdening a particular religious practice. *See id.* at 879 ("the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability"). Accordingly, a "neutral law of general applicability is constitutional if it is

10

supported by a rational basis." *Ill. Bible Colleges Ass'n v. Anderson*, 870 F.3d 631, 639 (7th Cir. 2017).

To determine if a law is neutral, the Court must first "examine the object of the law." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 631 (7th Cir. 2007). A law is not neutral if its object is "to infringe upon or restrict practices because of their religious motivation." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993).

In this case, Williams has failed to plead facts tending to show that EO 2020-10 targets religion. As the Governor argues, the stay-at-home orders are neutral and generally applicable because "they apply broadly to public gatherings, both religious and secular." Def. Governor's Mem. at 11. Williams's response to the Governor's motion, that "there is no solid evidence that there was a public health crisis" that necessitated a stay-at-home order, lacks merit. As the Governor contends, as of June 12, 2020, over 6,000 people in Illinois died of COVID-19. Since then, over 3,000 other people in this state have lost their lives to the virus. Williams failed to respond to any of the Governor's other arguments pertaining to his free exercise claim. Williams's Resp. at 4.

The Court agrees with the Governor's contention that EO 2020-10 is constitutional under *Employment Division v. Smith*. Moreover, the Seventh Circuit held as much in an order it issued on May 16, 2020 regarding EO 2020-32, which is similar to EO 2020-10 in that the ban on large public gatherings (gatherings of more than 10 people) applies broadly to religious and non-religious activities alike. *See Elim*, 2020 WL 2517093, at *1 ("[EO-32]'s temporary numerical restrictions on public gatherings

apply not only to worship services but also to the most comparable types of secular gatherings, such as concerts, lectures, theatrical performances, or choir practices, in which groups of people gather together for extended periods. . .").

In sum, the object of EO 2020-10 was to preserve public health and safety throughout Illinois. Any burden it may have imposed on religion was only "incidental." *See Smith*, 494 U.S. at 879. Williams has not alleged a plausible basis for a contention that the Governor's issuance of stay-at-home orders in response to a public health emergency was a pretext for the infringement of his First Amendment rights. *See Jacobson*, 197 U.S. at 28-29 (explaining that laws enacted "under the guise of exerting a police power" are invalid when they "violate[] rights secured by the Constitution"). As such, the Court concludes, under traditional First Amendment analysis, that EO 2020-10 was supported by a rational basis—slowing the spread of COVID-19 in Illinois—and did not violate the Free Exercise Clause.

For these reasons, the Court dismisses Williams's First Amendment claim (count 1).

### 2. Due process claims

In count 2 of the complaint, Williams alleges procedural and substantive due process claims against the Governor under the Fifth and Fourteenth Amendments.[2] The Governor has moved to dismiss these claims on the grounds that Williams fails to allege specific factual allegations.

---

[2] In count 4, Williams makes conclusory allegations invoking the Equal Protection Clause of the Fourteenth Amendment. *See* Compl. ¶¶ 104-07. But he has failed to plead even minimal facts to suggest a cognizable equal protection allegation. *See Iqbal*, 556 U.S. at 678.

### i.  Fifth Amendment

Williams asserts violations of his procedural and substantive due process rights under the both Fifth and Fourteenth Amendment, but the factual contents of his complaint appear to be based on the Fifth Amendment's Takings Clause. Compl. ¶ 90 ("As part of the Plaintiff's protected constitutional right to pursue happiness . . . private property [cannot] be taken for public use, without just compensation by restricting the use of that property without just compensation"); U.S. Const. amend. V; *see Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2011) ("The Takings Clause … prohibits the government from taking private property for public use without just compensation").

But Williams has failed to sufficiently allege that the government took his private property for public use.  *See Palazzolo*, 533 U.S. at 617.  Rather, he makes vague and conclusory statements regarding the stay-at-home order's impact on his use and enjoyment of unspecified property.  *See, e.g.*, Compl. ¶ 91 ("The Order requiring Plaintiff to stay in his home has deprived him of his liberty to pursue his desire to become the 46th President of the United States and interferes with and substantially disturbs Plaintiff's use and enjoyment of his property. . .").  As the Governor correctly contends, the plaintiff's factual allegations under the Fifth Amendment's Takings Clause are insufficient.  To survive a motion to dismiss stage, a plaintiff must provide more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678.  Williams has not done so.

### ii.  Fourteenth Amendment

Williams's complaint also appears to allege a Fourteenth Amendment substantive due process claim, but he fails to include sufficient factual allegations to make out the

13

elements of such a claim. In count 2 of the complaint, Williams's only reference to due process is the following sentence: "Plaintiff respects the language in the [stay-at-home] order, but states it should be a choice, and not an order which violates due process of law." Compl. ¶ 93. Williams's allegations are insufficient to make out a plausible substantive due process claim. *See Campos v. Cook County*, 932 F.3d 972, 975 (7th Cir. 2019) (explaining that "a plaintiff must allege that the government violated a fundamental right or liberty" and "that violation must have been arbitrary and irrational").

Moreover, as the Governor argues, even if Williams intended to assert a substantive due process claim based on the alleged infringements of his rights of association and to free exercise of his religion—the assertions on which he bases his First Amendment claims—a substantive due process claim cannot be asserted in these circumstances. "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994); *see also Wilks v. Rose*, 715 F. App'x 545, 548 (7th Cir. 2018) (citing *Albright* and explaining that the plaintiff's substantive due process claim "amounts to little more than a futile repackaging of [his] First Amendment claim").

For these reasons, the Court dismisses Williams's Fifth and Fourteenth Amendment claims (count 2).

**B.     RFRA claims**

In counts 3, 4, and 5, Williams alleges that EO 2020-10 violates the federal

14

RFRA statute, 42 U.S.C. § 2000bb-1.[3] In count 4, he alleges that EO 2020-10 improperly restricts "expressive religious/spiritual activity." Compl. ¶ 105. The Governor argues that Williams fails to state a plausible claim under RFRA because it does not apply to the states.

The Court agrees. In *City of Boerne v. Flores*, 521 U.S. 507, 511 (1997), the Supreme Court held that Congress exceeded its legislative authority under section 5 of the Fourteenth Amendment when it applied RFRA to the states. The Court therefore held that RFRA was unconstitutional as applied to state laws. *See id.* In *Illinois Republican Party v. Pritzker*, No. 20-2175, 2020 WL 5246656 (7th Cir. Sept 3, 2020), the Seventh Circuit reiterated that "RFRA could not be applied to the states." *Id.* at *5. Williams's RFRA claims, in which he challenges actions taken by the governor of a state, is therefore beyond the coverage of RFRA.

Accordingly, the Court dismisses Williams's RFRA claims (counts 3, 4, and 5).

**C.   Other claims**

In count 5, Williams, alleges that the Governor, in issuing EO 2020-10, violated the APA and the Indigenous Peoples Declaration. The Governor argues that the Court lacks subject matter jurisdiction over these claims. The Court agrees.

**1.   APA**

First, Williams's apparent claim that EO 2020-10 amounts to invalid agency action is not a cognizable claim under the APA. 5 U.S.C. § 706(a)(A)-(C). The APA does not authorize claims against non-federal entities. *Id.* § 701(b)(1)(A) ("'agency'

---

[3] Williams does not identify a specific provision of RFRA in his complaint or his memorandum in opposition to the motion to dismiss.

means each authority of the Government of the United States"); *see Karst Env'tl Educ. & Prot., Inc. v. E.P.A.*, 475 F.3d 1291, 1298 (D.C. Cir. 2007) ("By its own terms, the APA does not apply to state agencies"). Williams also forfeited his APA claim by failing to respond to the Governor's arguments in support of dismissing it. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011) ("[Plaintiff] forfeited his opportunity to oppose the defendants' motion to dismiss by failing to respond to the arguments in support of those motions").

### 2. Indigenous Peoples Declaration

Williams alleges that the Governor violated the American Declaration on the Rights of Indigenous Peoples, a declaration adopted by the Organization of American States. As the Governor contends, however, the Court lacks subject matter jurisdiction over this claim.[4] This declaration is not a treaty in force, and it does not confer a private right of action in U.S. courts. *See Van Hope-el v. U.S. Dep't of State*, No. 18 C 0441, 2019 WL 295774, at *3 n.2 (E.D. Cal. Jan. 22, 2019) ("there is no private right of action under declarations such as the United Nations Declaration on the Rights of Indigenous Peoples and the American Declaration of the Rights of Indigenous Peoples"); *see also Sosa v. Alvarez-Machain*, 542 U.S. 692, 734 (2004) (holding that the United Nations Declaration of Human Rights does not "create obligations enforceable in the federal courts"); *see also Calderon v. Reno*, 39 F. Supp. 2d 943, 956 (N.D. Ill. 1998) (explaining that U.S. treaties not implemented by legislation "do not provide the basis for a private lawsuit unless they are intended to be self-executing").

Williams also contends that the Court has jurisdiction over this claim under the

Tucker Act, 28 U.S.C. § 1491, and the Little Tucker Act, 28 U.S.C. § 1346. Williams's Resp. at 5. Williams's argument lacks merit. The Tucker Act confers exclusive jurisdiction for certain types of claims on the United States Court of Federal Claims, not the federal district courts. Moreover, claims arising under the Tucker Act must be asserted against the United States. In this case, Williams's claims are asserted against the Governor of Illinois. Accordingly, this Court does not have jurisdiction under the Tucker Act. Also, although the Little Tucker Act confers original jurisdiction on the district courts, concurrent with the United States Court of Federal Claims, claims arising under the Little Tucker Act must be asserted against the United States. *See United States v. Bormes*, 568 U.S. 6, 7 (2012). In this case, the United States is not a defendant, and therefore the Little Tucker Act does not confer jurisdiction on this Court either.

For these reasons, the Court dismisses Williams's claims under the APA and Indigenous Peoples Declaration (count 5).

### 3. Writ of mandamus

Williams also seeks a writ of mandamus under 28 U.S.C. § 1361, which states that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." This statute does not confer jurisdiction to issue a writ of mandamus to an officer of state (as opposed to federal) government. *Pacheco v. Lappin*, 167 F. App'x 562, 563 (7th Cir. 2006) (noting that § 1361 is a federal mandamus statute). Although Williams's complaint includes claims against the President of the United States, which could theoretically provide a basis to issue a writ

of mandamus, the only official whose conduct Williams challenges in the complaint is the Governor of Illinois. Counts 1 through 5 of Williams's complaint contain no factual allegations regarding the President's conduct and he only asserts these claims against the Governor. Accordingly, there is no basis for a claim against the President.

Moreover, although counts 6 and 7 of Williams's complaint are directed against the President, this Court does not have subject matter jurisdiction over these claims. "Federal courts are of limited jurisdiction and may only exercise jurisdiction where it is specifically authorized by federal statute." *Evers v. Astrue*, 536 F.3d 651, 657 (7th Cir. 2008). The promissory estoppel and breach of fiduciary duty claims that Williams asserts against the President do not independently confer federal-question jurisdiction. Moreover, the Court concludes that the Governor is entitled to dismissal of counts 1 through 5, so there is no basis for supplemental jurisdiction over Williams's claims against the President, either. For these reasons, the Court lacks subject matter jurisdiction under § 1361 and therefore dismisses this claim.

## Conclusion

For the foregoing reasons, the Court grants the defendant's motion to dismiss [dkt. no. 13] and directs the Clerk to enter judgment dismissing the case with prejudice. Although Federal Rule of Civil Procedure 15(a)(2) establishes a "presumption in favor of giving plaintiffs at least one opportunity to amend," district courts have broad discretion to "deny leave to amend when such amendment would be futile." *Loja v. Main Street Acquisition Corp.*, 906 F.3d 680, 684-85 (7th Cir. 2018) (internal citations omitted). In this case, Williams's response to the Governor's motion to dismiss indicates that he is "hoping that discovery will turn up . . . a basis for" his claims. *See Gavin v. AT&T Corp.*,

543 F. Supp. 2d 885, 900 (N.D. Ill. 2008); *see* Williams's Resp. at 4 ("The Defendant has provided no solid evidence that there was a public health crisis that required a 'shelter in place' to stop the spread of a virus … these are merely allegations and prior to making a ruling, Plaintiff should be allowed limited discovery"). In his response brief, Williams also failed to respond to many of the Governor's substantive arguments in support of dismissing his claims and instead incorporated contentions and speculations that are unrelated to issues before the Court. *See, e.g.*, Williams's Resp. at 9 ("It is worth nothing that Gov. J.B. Pritzker could be financially benefiting from the coronavirus pandemic following reports that his family's investment firm has a stake in two companies doing tests for the contagion"). At this stage, Williams has not "offer[ed] any meaningful indication of how [he] would plead differently" if given the opportunity to amend his complaint. *See Independent Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012). The Court therefore concludes that amendment in this case would be futile.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: October 16, 2020